UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PACIFIC EMPLOYERS INSURANCE
COMPANY,

                          Plaintiff,

        v.                                                1:11-CV-912

TROY BELTING & SUPPLY COMPANY,
HARTFORD ACCIDENT AND INDEMNITY
COMPANY, HARTFORD CASUALTY
INSURANCE COMPANY, HARTFORD
INSURANCE COMPANY OF THE MIDWEST,
and ABC COMPANIES 1 THROUGH 20,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Before the Court is the motion for partial summary judgment of Defendants Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, and Hartford Insurance Company of the Midwest ("Hartford"). See dkt. # 169. Hartford seeks a declaratory judgment from the Court that its duty to indemnify Defendant and Third-Party Plaintiff Troy Belting & Supply Company ("Troy Belting") for the asbestos claims underlying the lawsuit is triggered by injury-in-fact and limited to Hartford's pro rata time-on-the-risk share. Plaintiff Pacific Employers Insurance Company ("Pacific Employers") and Defendant North River Insurance Company do not oppose the motion. See dkts. # 173, 174. Troy Belting opposes the motion. Third-Party Defendants Unigard Insurance Company and QBE Americas, Inc., also oppose the motion.

**I.   BACKGROUND**[1]

This case concerns insurance coverage for Troy Belting, which faces claims from persons exposed to asbestos. Troy Belting is a manufacturer incorporated in New York with its principal place of business in Watervliet, New York. (Hartford's Statement of Material Facts ("Hartford's Statement"), dkt. # 169-1, at ¶ 1). Troy Belting has been named as a defendant in lawsuits alleging bodily injury caused by exposure to asbestos from products the company allegedly manufactured. (Id. at ¶ 2). Troy Belting notes that Hartford fails to identify any specific lawsuits upon which it seeks a judgment. (Troy Belting's Response to Hartford's Statement of Material Facts, dkt. # 177, ("Troy Belting's Statement") at ¶ 2).

Hartford, an insurance company, issued seven primary insurance policies to Troy Belting between 1984 and 1992. (Hartford's Statement at ¶ 3). Troy Belting contends that Hartford issued policies effective from 1984 to 1994. (Troy Belting's Statement at ¶ 3). The policies all contained similar provisions establishing that:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily harm . . . to which the insurance applies, caused by an occurrence;

and

---

[1] Local Rule 7.1(a)(3) regulates summary judgment motions. Under the Rule, a party moving for summary judgment is to file with that motion "a Statement of Material Facts" which "set[s] forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." L.R. 7.1(a)(3). For every such fact, the moving party is to "set forth a specific citation to the record where the fact is established." Id. The rule emphasizes that "[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in denial of the motion." Id. (emphasis in original). Rule 7.1(a)(3) requires the opposing party to file a response to that statement. Id. The response must address each paragraph of the moving party's statement, citing to the record for any factual disputes that exist. Id. The Rule further provides that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. (emphasis in original). The Court will note where the parties disagree in their statements of fact.

> "[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

and

> "[B]odily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period;

(Id. at ¶ 4). Troy Belting points out that it has not yet been able to explore the authenticity of the policies provided by Hartford through additional discovery and deposition testimony. (Troy Belting's Statement at ¶ 4).

Plaintiff Pacific Employers Insurance Company ("Pacific Employers") issued primary insurance policies to Troy Belting for the period from October 3, 1974 to November 1, 1984. (Hartford's Statement at ¶ 5). Those policies contained language that included provisions substantially similar to these:

> The Company will pay on behalf of the Insured, except as hereafter provided, all sums which the Insured shall become legally obligated to pay as damages because of . . . personal injury . . . to which this insurance applies . . which occurs during the policy period within the policy territory, and caused by an occurrence[;]

and

> "[O]ccurrence" means an accident, including continuous or repeated exposure to to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

(Id. at ¶ 6). Troy Belting again contends it is unable to confirm the authenticity of this language, as not all of the policies have been produced in the case. (Troy Belting Statement at ¶ 6).

Beginning in 1995, Troy Belting began tendering asbestos suits to Hartford and Pacific Employers. (Hartford's Statement at ¶ 7). The two insurers contend that they agreed to defend and indemnify Troy Belting in connection with the law suits, subject to a reservation

of rights. (Id.). Troy Belting points out that Hartford has not named the suits to which these claims refer and thus the company has no means of knowing whether a reservation of rights exists for each suit. (Troy Belting's Statement at ¶ 7). Hartford and Pacific Employers have together paid one-hundred percent of Troy Belting's defense and indemnification costs incurred in connection with the asbestos lawsuits. (Hartford's Statement at ¶ 7).

Hartford and Pacific Employers have asked Troy Belting to contribute to indemnity costs incurred in connection with the underlying suits that involved injuries during periods in which Troy Belting was insured by other carriers or not insured. (Id. at ¶ 8). Troy Belting has declined to do so. (Id.). Troy Belting contends that the two companies first began demanding that Troy Belting contribute to indemnity costs in 2009, after several cases had been resolved. (Troy Belting Statement at ¶ 8). Troy Belting contends that this was the first time that the companies had ever claimed a "full reservation of rights" under the policies in question. (Troy Belting's Statement of Additional Material Facts ("Troy Belting's Additional Statement"), dkt. # 177, at ¶ 6). Hartford responds that the company has claimed a full reservation of rights in every case that it has defended for Troy Belting since 1995. (Hartford's Response to Troy Belting's Statement of Further Material Facts ("Hartford's Response"), dkt. #185-5, at ¶ 6).

Troy Belting also alleges that Hartford and Pacific Employers retained counsel for Troy Belting in 1995, after the companies were notified about the pending lawsuits. (Troy Belting's Additional Statement at ¶ 5). Even after the companies reserved their rights, the attorney retained by the insurers continued to attempt to settle cases. (Id. at ¶ 8). In one case filed in the Schenectady County, New York, Supreme Court, a reservation of rights letter was sent in April 2009, even though a trial date had been set for June 2009. (Id.).

Despite this reservation of rights, the insurer's attorney engaged in settlement negotiations and settled the case with Hartford and Pacific Employers' approval. (Id. at ¶ 9). Troy Belting did not authorize such settlement. (Id. at ¶ 10). Troy Belting refused to contribute to the settlement. (Hartford's Response at ¶ 10). In that action, the insurers agreed only to pay their respective "proportionate shares" of the settlement. (Troy Belting's Additional Statement at ¶ 11).

The insurers' attorney controlled the entire litigation, even though Troy Belting requested that an independent counsel be appointed at the insurers' expense. (Id. at ¶ 12). The insurers refused to pay for such counsel, and have refused to provide copies of entire files to Troy Belting's independent counsel. (Id. at ¶¶ 13, 19). Hartford points out that Troy Belting's counsel has been invited to view the entire defense file at counsel's convenience. (Hartford's Response at ¶ 19). Another case in the Schenectady County Supreme Court settled in a similar fashion. (Troy Belting's Additional Statement at ¶¶ 14-15).

Troy Belting contends that counsel hired by the insurers has done noting to address the timing and onset of bodily injuries in the underlying actions. (Id. at ¶ 17). The attorney could only examine medical records or conduct a medical "work-up" with permission from Hartford and Pacific Employers. (Id.). According to Troy Belting, the attorney the insurers hired has informed Troy Belting's counsel that the insurers do not obtain a medical analysis on all cases, even though they contend that the date of onset is crucial to determining insurer's liability. (Id. at ¶ 18).

Troy Belting emphasizes that the company has traced its insurance history since around 1948. (Id. at ¶ 20). At no point since that has Troy Belting been self-insured or unisured. (Id.).

Plaintiff Pacific Employers filed a Complaint in this matter on August 3, 2011.  See dkt. #1.   Plaintiff filed an Amended Complaint on August 26, 2011.  Pacific Employers named as Defendants Troy Belting, Hartford Insurance Company and unidentified ABC Companies 1 through 20.  Id.  The Complaint seeks declaratory relief concerning the extent of Plaintiff's obligation to defend and indemnify Troy Belting in connection with any asbestos law suits.  Id. at ¶ 1.  Pacific Employers also seeks reimbursement for moneys paid on behalf of Troy Belting in prior asbestos litigation.  Id. at ¶ 2.  Pacific Employers argues that Pacific Employers and Hartford have funded 100% of Troy Belting's indemnity related to asbestos injury lawsuits during the period where Troy has been a defendant.  (Id. at ¶ 14).   Troy Belting has refused to contribute to indemnification on these asbestos claims.  (Id. at ¶ 15).  Pacific Employers claims that Troy Belting must contribute to indemnity for bodily injury claims during the non-insured periods on a *pro rata* allocation methodology based on time on the risk.  (Id. at ¶ 16).  Troy Belting has not done so.  (Id. at ¶ 14).   Count I of the Complaint seeks a declaratory judgment from the Court determining the obligations Troy Belting and the insurance company defendants to indemnify Pacific Employers for funds paid to settle claims.  Count II seeks equitable contribution from Troy Belting for any excess funds expended by Pacific Employers to settle claims.  Count III seeks a declaratory judgment on payment of defense costs.  Count IV seeks payment from Troy of these defense costs.

Troy Belting then filed an answer to the Amended Complaint, a cross-claim against Hartford, and a counterclaim against Pacific Employers.  See dkt. #12.  Hartford answered the Amended Complaint by filing a cross claim against Troy Belting and a counterclaim against Pacific Employers.  See dkt. # 16.  Troy Belting eventually obtained leave of Court to file a Third-Party Complaint against non-party insurers.  See dkt. #40.  The Third Party

Complaint named a number of insurance companies who had allegedly issued policies to Troy Belting. See dkt. #41. Plaintiff filed an amended third-party complaint that named a revised group of insurers with leave of Court. See dkt. #106. Several of the insurers named in the third-party complaint and amended complaint were voluntarily dismissed from the Complaint during the course of discovery. Finally, the Hartford Defendants filed the instant motion for partial summary judgment. See dkt. # 169. Plaintiff Pacific Employers filed a document that purportedly joins in Hartford's motion. See dkt. # 174. Pacific Employers did not file a motion seeking judgment on the claims raised in the Complaint, and did not file any supporting documents beyond its brief. Id. The parties then briefed the issues, bringing the case to its present posture.

## II.    LEGAL STANDARD

The Hartford Defendants have filed a motion for partial summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish

a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

### III.     ANALYSIS

This declaratory judgment action concerns the obligations of insurers to cover claims for asbestos-related injuries under policies issued to Troy Belting. The parties disagree about the extent to which Pacific Employers and the Hartford Companies are obligated to provide indemnity for injuries first reported after the two companies stopped providing insurance to Troy Belting. The dispute arises because the insurers have demanded indemnity from Troy Belting for payments made to parties injured by asbestos which the insurers contend another party was actually obligated to pay. Asbestos-related injuries can manifest themselves years after actual exposure, and the argument between the parties here is whether insurers who were not on a policy at the time when the injuries actually manifested themselves are still liable to provide coverage. Such cases usually raise two questions: (1) when did the injury occur, "triggering" insurance coverage and (2) which party or parties are responsible for paying the indemnification costs.

Hartford argues that the Court should grant summary judgment and declare that the triggering event that invokes coverage in asbestos-related injury cases is determined by the

"injury-in-fact" test. That test "rests on when the injury, sickness, disease or disability actually began and . . . requires the insured to demonstrate actual damage or injury during the policy period." Continental Cas. Co. v. Employers Ins. Co. of Wausau, 60 A.D.3d 128, 148, 871 N.Y.S.2d 48, 63 (N.Y. App. Div. 2008) ("Keasbey"). Under this standard, "'a real but undiscovered *injury*, proved in retrospect to have existed at the relevant time, would establish coverage, irrespective of the time the injury became [diagnosable].'" Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1194 (2d Cir. 1995) (quoting American Home Products Corp. v. Liberty Mutual Insurance Co., 748 F.2d 760, 766 (2d Cir. 1984) (emphasis in original)). Thus, "where the evidence establishes a progressive bodily disease [e.g. asbestosis, pleural plaques, or cancer], with injury-in-fact recurring throughout the disease process, all policies in effect at any time during that process are triggered." Id. at 1197.

Hartford also argues that summary judgment should be granted on the question of the standard to be used in determining the liability of insurance carriers who had policies in place during the time an injury occurred. Hartford, citing to several New York state and federal cases, insists that this method should be one that assigns pro rata shares based on the insurer's time on the risk. This method rejects the idea of joint and several liability for insurers when "an alleged continuous harm spans many years and thus implicates several successive insurance policies." Consolidated Edison Co. of N.Y. v. Allstate Ins. Co., 89 N.Y.2d 208, 221, 746 N.Y.S.2d 622, 628 (2002). Instead, the pro rata time-on-the-risk analysis holds that "each insurer shall bear pro rata responsibility for funding the settlement, in direct proportion to each insurer's time on the risk." Serio v. Pub. Serv. Mut. Ins. Co., 304 A.D. 2d 167, 175, 759 N.Y.S.2d 110, 116 (N.Y. App. Div. 2003).

Defendant Troy Belting opposes the motion in two ways. First, Troy Belting argues that discovery has not been completed and there is no way to apply the legal standards that Hartford seeks to have enunciated to actual cases. As such, facts do not yet exist by which the motion could be determined. Second, Troy Belting argues that Hartford should be equitably estopped from seeking to avoid payment on any portion of the asbestos-related claims. Troy Belting contends that Hartford has provided defense and indemnity for asbestos claims since 1995, creating in Troy Belting a justified reliance on Hartford's promise to pay.[2]

Hartford's response to Troy Belting's arguments demonstrates why the Court must deny the motion for partial summary judgment. In disputing Troy Belting's claim that Hartford's motion addresses issues which are not yet ripe, Hartford argues that the insurance company is not seeking to have the Court resolve any factual issues. The parties, after all, "are not at the damages phase, and Hartford is not seeking judgment as to specific underlying cases. Rather, Hartford is seeking a declaration that will establish the legal framework within which those issues may be litigated." Reply of Hartford in Support of Motion for Partial Summary Judgment, dkt. # 185, at 22-23.

In other words, Hartford's motion for partial summary judgment does not seek to have the Court resolve any case or controversy presently before the Court, but instead asks

---

[2]Third-Party Defendants Unigard Insurance Company and QBE Americas, Inc., also oppose Hartford's motion. See dkt. # 182. Unigard does not oppose a finding that coverage is triggered by an injury in fact. Id. at 3. Unigard argues, however, that the Court should make no findings as to the existence of an injury in fact in any of the underlying cases, since such a determination must be based on the medical evidence in the individual cases. Id. at 3-4. The same argument applies to the issue of allocating responsibility for coverage, though Unigard differs somewhat from Hartford on how pro-rata shares should be determined. Id. at 5-6. Unigard's argument demonstrates how Hartford seeks an advisory opinion that the Court cannot provide: Unigard agrees that a general legal standard exists to resolve these claims, but argues that the legal standard itself does nothing to resolve the factual issues at the heart of the case.

the Court to explain the legal rules by which the factual issues which confront the parties may later be resolved. Troy Belting is correct to argue that summary judgment cannot be granted on this basis. Hartford essentially seeks an advisory opinion in which the Court determines for the parties what the law is so that the parties can then apply that law to the relevant facts.[3] The Court cannot make such a ruling, since "the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." United Public Workers v. Mitchell, 330 U.S. 75, 89 (1947). In this case, Hartford seeks a declaratory judgment, a situation which requires a "'real question of conflicting interests.'" Berni v. International Gourmet Restaurants, Inc., 838 F.2d 642, 649 (2d Cir. 1988). While there would seem to be conflicting interests in this case over the date of injury and the apportionment of liability, "[f]or a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" Ashcroft v. Mattis, 431 U.S. 171, 172 (1977) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242 (1937)). Though insurance cases sometimes permit a court to issue an opinion about coverage based on contingencies which have not yet come to pass, courts in such situations are still required to "focus on 'the practical likelihood that the contingencies will occur[.]'" Associated Indem. Corp. v. Fairchild Industries, Inc., 961 F.2d 32, 35 (2d Cir.

---

[3]Third-Party Defendant North River Insurance Company's Joinder in Hartford's Motion also underscores the fact that the motion seeks an advisory opinion. See dkt. # 173. North River agrees with Hartford that the insurers' indemnity obligations must be prorated based on time on the risk. Id. at ¶ 3. At the same time, North River objects to "Hartford's apparent suggestion at footnote 6 of its Memorandum of Law that this Court would readily adopt a vertical exhaustion approach to coverage where there are multiple layers of coverage for continuing losses[.]" Id. at ¶ 4. While noting that "Hartford has not moved for judgment that a vertical exhaustion of coverage approach should be applied in this case[,]" North River informs the Court of its position that a proper approach to determining liability for insurers would come from a "'horizontal exhaustion' theory[.]" Id. at ¶¶ 5, 7. In other words, while recognizing that Hartford seeks simply to have the Court declare the state of the law on asbestos cases, North River attempts to convince the Court to reject a hypothetical argument and declare instead that another standard applies to another hypothetical situation.

1992) (quoting 10A C. Wright, A Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE, § 2757, at 587).

Here, Hartford admittedly seeks to have the Court resolve a legal issue on a purely hypothetical basis, and does not rely on any contingencies which are likely to occur as a basis for asserting the Court's right to offer an opinion.[4]  Instead, Hartford simply seeks to have the Court issue hypothetical guidance on the law that the parties should apply to the facts they later discover.  Hartford's motion is for "partial" summary judgment, but not because the motion seeks judgment only on some of the claims in the case.  Instead, the motion is "partial" because Hartford admits that the facts necessary to determine how to apply the legal standards applicable to this case have not yet been collected.   Hartford therefore seeks an advisory opinion from the Court that the Court is not permitted to provide.  Such advisory opinions are not within the province of the federal courts, and the Court must decline to offer one.  Hartford's motion will be denied.  The motion will be denied without prejudice, however, to the any of the parties raising such a motion based on particular facts of particular cases.[5]

---

[4] Pacific Employers' "Response" to Hartford's motion demonstrates as well that Hartford seeks an inapporpirate advisory opinion from the Court.  See dkt. # 174.  Hartford's motion seeks summary judgment on two issues, not on any particular claims.  As such, Hartford does not seek summary judgment as applied to any of the underlying cases that gave rise to the Complaint.  Despite the fact that Pacific Employers sued Hartford on these issues, Pacific Employers now joins in Hartford's motion for summary judgment.  In the end, Pacific Employers simply agrees with Defendant Hartford as to the legal standard at issue in this case.  Under circumstances where the motion for summary judgment actually involved a controversy between two parties, agreeing to the motion for summary judgment of an opposing party would normally lead to a stipulation of dismissal.  Pacific Employers simply agrees, however, with the Defendant as to the legal standards that should prevail in the case going forward and does not seek a judgment that would have any kind of immediate legal effect.  The issue here is not just the legal standard, but how that standard should be applied to the particular facts in the underlying cases.

[5] Troy Belting's response to Hartford's motion suggested that Hartford should be obligated to supply independent counsel to represent the insured in asbestos-related proceedings.  Troy Belting did not actually
(continued...)

## IV. CONCLUSION

For the reasons stated above, Defendant Hartford's motion for partial summary judgment, dkt. # 169, is hereby **DENIED**.

IT IS SO ORDERED

Dated: June 20, 2014

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

[5](...continued)
file a motion requesting appointment of independent counsel with the Court as required by Local Rule 7.1. Even if Troy had filed such a motion, the Court would deny it. Troy Belting argues that, because Hartford seeks indemnity for payments made for events not in the policy period, Hartford has a conflict of interest in defending asbestos cases involving the insured company. Troy argues that the conflict of interest comes because Hartford's assigned counsel is supposed to protect Troy's interests, but establishing that the injury came in a period other than a covered period would be beneficial to Hartford and not to Troy. The Court is not persuaded by this argument. First, Troy and Hartford share an interest in minimizing any settlement altogether, and in proving that an injury did not occur. Second, Troy represents that insurance is available for all periods covered in the case. Thus, all payment to plaintiffs in the underlying cases will presumably come from insurance and the interests of Troy and the Hartford are not at odds in that respect. In any case "[i]ndependent counsel is only necessary in cases where the defense attorney's duty to the insured would require that he defeat liability on any ground and his duty to the insurer would require that he defeat liability only upon grounds which would render the insurer liable." Public Serv. Mut. Ins. Co. v. Goldfarb, 53 N.Y.2d 392, 401, 442 N.Y. 2d 422, 427 (1981). Here, Troy does not argue about liability, but instead about the assignment of indemnity. Moreover, both Troy and Hartford would benefit from a finding that Troy was not liable, since no duty to indemnify could possible exist for either party under those circumstances. Troy has therefore not pointed to any grounds which would require the appointment of counsel.