**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PACIFIC EMPLOYERS INSURANCE COMPANY,

                          Plaintiff,

- v -

TROY BELTING & SUPPLY COMPANY,
THE HARTFORD INSURANCE COMPANY,
HARTFORD ACCIDENT AND INDEMNITY COMPANY,
HARTFORD CASUALTY INSURANCE COMPANY,
HARTFORD INSURANCE COMPANY OF THE MIDWEST,
AND ABC COMPANIES 1 THROUGH 20,

                          Defendants.

TROY BELTING & SUPPLY COMPANY,

                          Third Party Plaintiff,

    -v-

                                            Civ. No. 1:11-CV-912
                                                (TJM/RFT)

UNIGARD INSURANCE COMPANY,
QBE AMERICAS, INC.,
ST PAUL FIRE AND MARINE INSURANCE COMPANY,
CONTINENTAL CASUALTY COMPANY,
THE NORTH RIVER INSURANCE COMPANY,
LIBERTY MUTUAL GROUP, INC.,
HARLEYSVILLE GROUP INC.,
HARLEYSVILLE INSURANCE COMPANY,
HARLEYSVILLE INSURANCE COMPANY OF NEW YORK
and BERSHIRE MUTUAL INSURANCE GROUP,

                          Third Party Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

The issue before the Court is whether and " the Hartford"[1] and Pacific Employers Insurance Company ("Pacific Employers) are entitled to discovery of Troy Belting & Supply Company's ("Troy Belting") financial information prejudgment.

Pacific Employers seeks a judgment declaring the rights and duties of all of the named parties with respect to their respective obligations as to the defense and indemnification of Troy Belting, a defendant in asbestos bodily injury claims; Pacific Employers also seek reimbursement for monies paid by it in defending and indemnifying Troy Belting for prior settlements related to these asbestos claims. Dkt. No. 9, Am. Compl. More precisely, Pacific Employers state that it and the Hartford have been paying 100 percent of the defense and indemnity costs in connection with the asbestos related suits brought against Troy Belting. Essentially, Pacific Employers and the Hartford seek a judgment determining that they are only obligated to pay their appropriate *pro rata* share of the defense and indemnity costs and that Troy Belting, in particular, is required to pay for periods when it was self-insured, uninsured, or underinsured, and for periods covered by now-insolvent insurers. And, for those amounts paid in excess of their *pro rata* shares, Pacific Employers and the Hartford seek reimbursement from Troy Belting. *See* Dkt. No. 230, Hartford Mem. of Law, dated Feb. 20, 2015, at p. 1.

Additionally, there are Cross-Claims among the Defendants, and Troy Belting commenced a Third Party Action against various insurance carriers that may have provided coverage to it during the relevant period of this litigation. Dkt. No. 238, Def. Troy Belting Mem. of Law, dated Feb. 27, 2015, at p. 2.

---

[1] The Hartford Defendants are comprised of The Hartford Insurance Company, Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, and Hartford Insurance Company of the Midwest.

The Hartford posits that policyholders, like Troy Belting, have argued that New York's *pro rata* allocation rule does not apply when they are unable to pay their allocated share. Anticipating that Troy Belting may assert this argument in response to the pending Motion for Partial Summary Judgment on the allocation/reimbursement of indemnity and defense costs, Dkt. No. 203, the Hartford served discovery demands upon Troy Belting regarding its "ability to pay its appropriate share" of these costs. Hartford Mem. of Law at p. 2; *see also* Dkt. No. 230-1 & 2, Exs. Troy Belting objected to these demands because it was an improper attempt to obtain prejudgment financial discovery. Hartford Mem. of Law at p. 2. During the deposition of Troy Belting's corporate designee, David Barcomb, Troy Belting's Counsel refused to allow the witness to be questioned about its financial conditions. *Id*. at p. 4.

On January 12, 2015, Troy Belting filed a Letter-Motion seeking a conference to address this matter. Troy Belting raised that its adversaries' attempts to inquiry into its financial health is "simply an attempt to determine whether any potential judgment in this action . . . would be collectable . . . [and thus is] improper." Dkt. No. 215, Troy Belting Lt.-Mot., dated Jan. 12, 2015, at p. 1. In responding, the Hartford contended that Troy Belting's financial condition is indeed an issue in this case especially if it intends to argue prejudgment that it is financially unable to satisfy its obligation to contribute to defense or indemnity costs. And, should this be accurate, the Hartford is entitled to this discovery. Dkt. No. 219, Hartford Lt.-Br., dated Jan. 15, 2015.

On January 28, 2015, a telephonic Hearing was held on the record to discuss this and other discovery issues. During the Hearing, the Hartford argued that it was not uncommon in insurance litigation of this nature for policyholder to raise its inability to pay the contribution or the subsequent judgment, though such prior efforts have proven unsuccessful. Conversely, Troy Belting argues that

it is not asserting such a defense to the Hartford's Motion for Summary Judgment. In an attempt to resolve this dispute and directly determine if Troy Belting is intending to assert financial inability, the Court granted the Hartford permission to serve a single request for admission in order to ascertain Troy Belting's current and true position. Dkt. No. 227, Text Order, dated Jan. 28, 2015. The next day, the Hartford served Troy Belting with a request to admit that it will not assert, prejudgment or barring a bankruptcy filing, that it is financially unable to satisfy any obligation that may be imposed because of the Hartford's claims. Hartford Mem. of Law at p. 5; Dkt. No 230-10, Ex. 10 (Request to Admit). In a rather prolix and obscure Response, overflowing with numerous objections and without any representations as to its financial ability, Troy Belting denied the Request to Admit, "except to admit that Troy Belting is not placing its financial condition at issue in defending the claims asserted by the The Hartford in this action **at this time**." Hartford Mem. of Law at p. 6; Dkt. No. 230-11, Ex. 11 (Resp.) (emphasis added). Because Troy Belting has shrewdly embedded the qualifying phase – "at this time" – the Request to Admit did not resolve the issue, as the Court and others had hoped and, instead, has ushered in the Hartford's Motion to Compel Troy Belting to disclose its financial information. Dkt. Nos. 230, & 232, Pl.'s Mem. of Law, dated Feb. 20, 2015 (joining the Hartford's Motion).

The Hartford wants to discover whether Troy Belting is defending now or reserves the right to assert as a defense its lack of resources to bear its *pro rata* share of the indemnity and defense costs. The Hartford presents, as an example, the matter of *North River Insurance Company v. Duro Dyne National Corp.*,[2] where the policyholder responded by filing a motion for a temporary restraining order and a preliminary injunction, arguing that if it was forced to pay 100% of the

---

[2] This case was filed in the Supreme Court of the State of New York for the County of Suffolk in 2013. Dkt. No. 230-12, Ex. 12, Index. No. 062947/2013, Mem. of Law, dated Dec. 13, 2013.

defense costs, it will be irreparable injured which may lead it to file for bankruptcy. Hartford Mem. of Law at p. 7. The Hartford argues that if Troy Belting was contemplating a similar argument – unable to pay the costs – it should be allowed to elicit those germane facts through discovery in order to challenge its legal implication in this case. The Hartford further opines that if it is denied this discovery, and Troy Belting raises this defense after discovery is closed, it would not have a meaningful way to respond. *Id*. at p. 8. It is the Hartford's and Pacific Employers' position that Troy Belting should "either state unequivocally it will not, prejudgment and outside of a bankruptcy filing, defend against the Hartford's [and Pacific Employers'] claims on financial grounds, or the Court should compel Troy Belting" to respond to their discovery demands. Hartford Mem. of Law at p.8; Pl.'s Mem. of Law at p. 3.

In opposing the Motion to Compel, Troy Belting asserts that is has not placed its financial conditions at issue. Such is not asserted as an affirmative defense in its Answer, and Troy Belting states now, "[t]o be perfectly clear, [it] has no intention of raising a defense at any that would place its financial conditions at issue." Dkt. No. 238, Def. Troy Belting Mem. of Law, dated Feb. 27, 2015, at pp. 2, 4 & 11 ("For the record, Troy [Belting] has *no intentions* of placing its financial conditions at issue." (emphasis in original)).; *see also* Dkt. No. 12, Troy Belting Answer. Troy Belting exclaims that it should not be forced to speculate as to what may happen in the future. And, because it has done nothing to place its finances at issue, its financial health is not relevant to any element of any claim or defense asserted in this action. *Id*. at p. 6. In this vein, Troy Belting contends that there is no such legally cognizable defense to New York's *pro rata* allocation rule, and that the *Dura Dyne* case is not applicable. *Id*. at pp. 8 & 9-13. Troy Belting argues that for these reasons prejudgment discovery of a defendant's financial information is generally not allowed and

should not be allowed here. Therefore, Troy Belting not only asks the Court to deny the Hartford's Motion but to grant it a protective order striking the demands for financial information and notices of depositions. *Id*. at p. 14.

It is a generally recognized proposition of federal discovery law that a litigant is prohibited from discovery of an opponents assets until a judgment against the opponent has been rendered. *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1547 (D.C. Cir. 1994). But, this rule is not sacrosanct. A party's financial information can be relevant and subject to discovery if it "implicates specific elements of a claim or defense asserted in the dispute." *Gen. Mtrs. LLC v. Lewis Bros., LLC*, 2012 WL 3128949, at *8 (W.D.N.Y. July 31, 2012) (citing *Daval Steel Prods. Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367-68 (2d Cir. 1991)).

The Court closely scrutinized Troy Belting's Answer with its myriad of Affirmative Defenses and Counterclaims and was unable to detect any inference that Troy Belting has placed at issue its financial condition. Accepting Troy Belting at its word that it has "no intention of placing its financial condition at issue," notwithstanding imploring the caveat not "at this time," it does not appear that Troy Belting is interjecting its financial health into this case. Even though the parties submitted well-written Briefs, none provided any legal precedent that establishes that the inability to pay the indemnification and defense costs is a legally cognizable defense to a party's claims for *pro rata* allocation, nor was the Court able to discern such a recognized defense. Even the Hartford acknowledges that such grounds "lack support under New York law." Hartford Mem. of Law at p. 8. Although the Hartford posits that "policyholders sometimes argue (unsuccessfully) against application of New York's *pro rata* allocation rule on the grounds that they are unable to pay their allocated share," it only provided one example of its occurrence, and the Court was unable to

find other examples to supplement the Hartford's position. *Id*. at p. 1. The Court is not certain that *North River Insurance Company v. Duro Dyne Nat'l Corp*. is analogous or even an appropriate exemplar.

North River Insurance Company, the Umbrella Insurer, sued Duro Dyne and others seeking to <u>limit</u> its obligations in connection with a number of asbestos related bodily injury claims. In *Duro Dyne*, the defendant filed a motion seeking a temporary restraining order and a preliminary injunction. In order to succeed on the motion, *Duro Dyne* had to show that it was likely to succeed on the merits, irreparable injury would occur absent the granting of the injunction, and the equities balanced in favor of the party seeking the injunction. Dkt. No. 230-12, *Duro Dyne* Mem. of Law, at p. 11 (citations omitted). As to the second element, irreparable injury, Duro Dyne opined that it would suffer immediate and irreparable injury if it was required to pay 100% of the defense costs. *Id*. Its president, Randall S. Hinden, averred that Duro Dyne "is unable to pay the costs associated with mounting a defense to the Underlying Actions." Dkt. No. 230, Randall S. Hinden Aff., dated Dec. 26, 2013, at ¶ 14. Therefore, as it pertains to obtaining injunctive relief, Duro Dyne's inability to bear the full burden of the defense costs was interjected for the sole purpose of establishing the irreparable harm element and not for the fact it would prevail on the merits as a defense, the first element of the preliminary injunction. From the record provided, the Court could not discern that Duro Dyne even raised this as a defense prior to its motion or that it was successful with its motion. Noteworthy, Troy Belting has not sought a similar preliminary injunction distinguishing it from *Duro Dyne*. But for these two matters having underlying asbestos related actions with insurers and insured involved in litigation over the assumption of litigation costs, they are not analogous in any material respect. Duro Dyne may have asserted financial conditions in that case, which surely would

have opened the door for discovery of its financial conditions, but it does not appear that Troy Belting has made similar overtures in placing its finances into this matter. The Court is not persuaded that *Duro Dyne* has any significant prudential value or could even serve as a template for our matter.

Without more, the Court is not convinced that Troy Belting has interpose its financial wherewithal into this action nor that, even if it had, it could serve as a cognizable defense. There is no clear evidence that Troy Belting is insinuating its financial health into this litigation. It does not appear that this financial information is relevant to any specific element of the claims or defenses nor does it appear that Troy Belting is carefully laying the groundwork to surreptitiously interject it into this case in order to exclude the other parties' exploration of the details. In essence, the Court does not find any reason not to adhere to the seminal rule that prejudgment discovery of financial condition is not warranted here.

However, had Troy Belting not hedged its prose when responding to the Request to Admit, it would not have been confronted with this Motion. And, had it not diminuted its full throated response that it has no intention of placing its financial condition at issue with it "does not believe this will occur, but will not speculate on what other sort of circumstances could run afoul of the limitations of the phraseology of the Notice to Admit," Dkt. No 238 at p. 12,[3] the Court would comprehensively deny the Hartford's Motion to Compel. But, Troy Belting's adroit wordsmithing even leaves the Court to pause and to tread cautiously. This could be perceived as a reservation of rights, as the Hartford and Pacific Employers suggest, to be employed whenever it become strategic,

---

[3] To reiterate, Troy Belting repeated that "it cannot be forced to predict what circumstances may change that potentially could impact this litigation." Dkt. No. 238, Troy Belting Mem. of Law, dated Feb. 27, 2015, at pp. 3-4 ("Troy Belting should not be forced to speculate regarding what might happen in the future.").

*-8-*

especially when discovery is closed. Dkt. No. 239, Hartford Reply Mem. of Law, dated Mar. 4, 2015, at p. 2. The Court will not countenance such a tactical ploy.[4] For these reasons, though the Court is denying the Hartford's Motion at this juncture, it preserves for the Hartford and Pacific Employers the right to return to this Court at any future occasion should Troy Belting raise prejudgment the specter that it is placing its inability to pay as a defense to the claims. The Court guarantees that should this occur, they will be granted a full and complete opportunity to seek discovery of Troy Belting's financial condition.

The corollary the ruling above is that Troy Belting's request for a protective order is granted to the extent consistent with the reasoning above. Nonetheless, the Court will not strike Troy Belting's Response to the Request to Admit. All other grounds raised by Troy Belting are denied as meritless.

Therefore, it is hereby

**ORDERED** that the Hartford's Motion to Compel, Dkt. No. 230, is **denied without prejudice**; and it is further

**ORDERED** that Troy Belting's Motion for a Protective Order, Dkt. No. 238, is **granted in part and denied in part** consistent with the discussion above.

---

[4] Troy Belting should be keenly aware that when a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, it may not thereafter, simply because its interests have changed, assume a contrary position in the same proceeding, especially if it is to the prejudice of an adversary party. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). This is called the doctrine of judicial estoppel and it precludes a party that successfully maintained a particular position in one legal proceeding, from assuming a contrary position in a later proceeding solely because of a change in interest or circumstances or necessity. Put another way, this doctrine generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *Mulvaney Mechanical, Inc. v. Sheet Metal Workers*, 288 F.3d 491, 504 (2d Cir. 2002); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

**IT IS SO ORDERED**.

March 17, 2015
Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge