UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PACIFIC EMPLOYERS INSURANCE
COMPANY,

        Plaintiff,

   v.            1:11-CV-912

TROY BELTING & SUPPLY COMPANY,
HARTFORD ACCIDENT AND INDEMNITY
COMPANY, HARTFORD CASUALTY
INSURANCE COMPANY, HARTFORD
INSURANCE COMPANY OF THE MIDWEST,
and ABC COMPANIES 1 THROUGH 20,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## **DECISION AND ORDER**

Before the Court are motions for summary judgment by Plaintiff Pacific Employers' Insurance Company ("Pacific Employers"), Defendant Troy Belting & Supply Company ("Troy Belting") and Defendant Hartford Accident and Indemnity Company ("Hartford") in this matter involving insurance coverage for the costs of settling lawsuits related to asbestos exposure. See dkt. ##s 203, 254, 261.

**I.  Background**

This case concerns insurance coverage for Troy Belting. Troy Belting is a manufacturer incorporated in New York with its principal place of business in Watervliet, New York. Troy Belting has been named as a defendant in lawsuits alleging bodily injury caused by exposure to asbestos from products it allegedly manufactured. Settlements in these lawsuits have led to insurance payments, and Plaintiff Pacific Employers and Defendant

Hartford seek repayment from Troy Belting for portions of settlements in these lawsuits that the insurers claim they were not obligated to pay. Pacific Employers issued Troy Belting insurance polices that covered liability for asbestos exposure from 1974 to 1984 and the Hartford issued such policies from 1984 to 1992.

Plaintiff Pacific Employers filed a Complaint in this matter on August 3, 2011. See dkt. #1. Plaintiff filed an Amended Complaint on August 26, 2011. Pacific Employers named as Defendants Troy Belting, Hartford Insurance Company and unidentified ABC Companies 1 through 20. Id. The Complaint seeks declaratory relief concerning the extent of Plaintiff's obligation to defend and indemnify Troy Belting in connection with any asbestos law suits. Id. at ¶ 1. Pacific Employers also seeks reimbursement for moneys paid on behalf of Troy Belting in prior asbestos litigation. Id. at ¶ 2. Pacific Employers argues that Pacific Employers and Hartford have funded 100% of Troy Belting's indemnity related to asbestos injury lawsuits during the period where Troy has been a defendant. (Id. at ¶ 14). Troy Belting has refused to contribute to settlements on these asbestos claims. (Id. at ¶ 15). Pacific Employers claims that Troy Belting must contribute for bodily injury claims during the non-insured periods on a *pro rata* allocation methodology based on time on the risk. (Id. at ¶ 16). Troy Belting has not done so. (Id. at ¶ 14). Count I of the Complaint seeks a declaratory judgment from the Court determining the obligations Troy Belting and the insurance company defendants to indemnify Pacific Employers for funds paid to settle claims. Count II seeks equitable contribution from Troy Belting for any excess funds expended by Pacific Employers to settle claims. Count III seeks a declaratory judgment on payment of defense costs. Count IV seeks payment from Troy of these defense costs.

Troy Belting then filed an answer to the Amended Complaint, a cross-claim against Hartford, and a counterclaim against Pacific Employers. See dkt. #12. Hartford answered the Amended Complaint by filing a cross claim against Troy Belting and a counterclaim against Pacific Employers. See dkt. # 16. Troy Belting eventually obtained leave of Court to file a Third-Party Complaint agianst a number of non-party insurers. See dkt. #40. The Third Party Complaint named a number of insurance companies who had allegedly issued policies to Troy Belting. See dkt. #41. Plaintiff then filed an amended third-party complaint that named a revised group of insurers with leave of Court. See dkt. #106. Several of the insurers named in the third-party complaint and Amended Complaint were voluntarily dismissed from the Complaint during the course of discovery. Finally, the Hartford Defendants filed a motion for partial summary judgment. See dkt. # 169. The Court determined that this motion sought an inappropriate advisory opinion, as there was no evidence before the Court concerning specific cases where indemnity was requested. The Court therefore denied the motion for summary judgment, permitting the parties to file motions at an appropriate time to address the evidence actually before the Court. See dkt. # 196.

After collecting some evidence, Hartford filed a motion for partial summary judgment, seeking reimbursement for a portion of claims paid by Hartford on Troy Belting's behalf. See dkt. # 203. The parties delayed briefing the motion for nearly nine months. Meanwhile, Plaintiff filed a motion very similar to the one Hartford filed, likewise seeking reimbursement for a portion of the claims Pacific Employers paid out. See dkt. # 254. Troy Belting responded to both motions, filing as well a cross-motion for summary judgment that alleged that the Defendant had no obligation to reimburse either insurer. See dkt. # 261.

**II.     Legal Standard**

The parties seek summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

**III.    Discussion**

    **A. Choice of Law**

At issue in this case is the interpretation of parties' responsibilities under various insurance policies. The Court will apply New York law to interpreting these policies. "A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." Globalnet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 382 (2d Cir. 2006). This case involves insurance contracts. "The New York Court of Appeals has held that in contract cases, the 'center of gravity' or 'grouping of contracts' analysis is to be applied in determining the choice of law." Id. (quoting In re Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 226, 613 N.E. 2d 936 (1993)). To make this determination, the court is "to consider a 'spectrum of significant contracts'" and apply a number of factors, including "'the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties.'" Id. The parties do not appear to dispute that New York law applies.

This case thus involves the interpretation of insurance contracts. In New York, "'the cardinal principal for the construction and interpretation of insurance contracts–as with all contracts–is that the intentions of the parties should control.'" World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 184 (2d Cir. 2003) (quoting Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 135 (2d Cir. 1986)). Unless the parties state otherwise, "'words should be given the meanings ordinarily ascribed to them and absurd results should be avoided.'" Id. Language in insurance policies "should be examined 'in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.'" Id. The language used in the contract generally controls, unless ambiguity exists in that language. Id. The Court finds ambiguity when "a contract term 'could suggest more than one meaning when viewed objectively by a

reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" Id. (quoting Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000)). "Terms in a document, especially terms of art, normally have the same meaning throughout the document in the absence of a clear indication that different meanings were intended." Maryland Cas. Co. v. W.R. Grace & Co., 128 F.3d 794, 799 (2d Cir. 1997). An insurer, like the Plaintiff, "has the burden of proving it is entitled to the declarations it seeks." Continental Cas. Co. v. Employers Ins. Co. of Wausau, 60 A.D.3d 128, 135, 871 N.Y.S.2d 48, 54 (N.Y. App. Div. 2008) ("Keasbey"). To obtain a judgment that no duty to indemnify exists before trial, Plaintiff "must demonstrate as a matter of law that 'there is no possible factual or legal basis on which the insurer may eventually be held liable under its policy.'" Id. (quoting First State Ins. Co. v. J & S United Amusement Corp., 67 N.Y.2d 1044, 1046, 504 N.Y.S.2d 88, 90 (1986)).

### B. The Parties' Arguments[1]

Pacific Insurers and Hartford offer similar arguments in seeking summary judgment. They admit that they are responsible for indemnifying Troy Belting for a portion of the settlements paid out in various asbestos-related cases settled in New York. They list these cases and explain that, together, the two insurers funded 100% of the cost of settling them.

---

[1] Though the parties dispute vigorously certain facts, such as those forming the basis for the underlying lawsuits, the parties appear to agree that Hartford and Pacific Employers insured Troy Belting for asbestos-related injuries, and that the insurers were obligated under the policies in question to provide some coverage for Troy Belting in relation to the underlying lawsuits. The disagreement here is mostly over what percentage of the settlements the insurers were obligated by the policies to pay. Because of the nature of this opinion, the Court will not resolve any questions on particular settlements and will not provide any detailed discussion of the facts involved.

The insurers also provide evidence from each of the underlying cases concerning the date of first exposure to asbestos of the plaintiff in that action and the date on which the case was settled. The insurers then compare this date of first exposure and to the dates on which each insurer provided coverage to Troy Belting. As the cumulative dates from exposure to the end of the last Hartford policy were longer than the dates on which the two insurers provided coverage, they contend that they are entitled to reimbursement for overpayment during the periods when Troy Belting did not have coverage. Pacific Employers seeks $431,110.46 for coverage paid to settle the cases in question. The Hartford seeks $124,838.06.

Troy Belting responds by claiming that the insurers have not provided adequate proof of the date of first exposure for the plaintiffs in the underlying cases. The company contends that much of the evidence relied on by the insurers is hearsay and inadmissible. Moreover, more evidence is necessary to fully establish the dates the insurers claim. Troy Belting also contends that other insurers may be obligated to contribute to the costs of settling the underlying cases, and that the insurers are obligated to seek contribution from those parties before demanding repayment from Troy Belting.

After examining the parties' arguments and exhibits, the Court has determined that the matter is not yet ripe for disposition because the identities of various insurers and their obligations towards the cost of settlement have not yet been established.

### C. Analysis

This case involves insurance coverage for illnesses caused by exposure to asbestos. Such cases present a particular challenge for courts because they often involve illnesses that manifest themselves long after exposure to a dangerous product. Such long

latency periods create difficult questions about the risk borne by insurers who provided coverage during those periods. How much should an insurer be obligated to pay when that insurer provided coverage only during a portion of the time that the disease developed and then appeared? What obligation does a party that at times lacked insurance have under those circumstances? The question presently before the Court is the amount of indemnity each insurer was obligated to pay as a result of the settlements in the asbestos-related suits in question when the insurers contend there were periods when Troy Belting had other insurance or no insurance. In answering this question, the Court is required to determine the event that triggers coverage and the means for determining the obligation of each insurer. The Court will address each in turn.

### a. Triggering Event

There appears to be no dispute among the parties as to the event that triggers coverage. The insurers appear to accept that coverage was triggered by the underlying plaintiffs' exposure to asbestos. As a general matter, the event that triggers coverage in New York is determined by the language of the insurance policy. Here, Pacific Employers is obligated to pay coverage for "sums" an insured becomes "legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence." An occurrence is "an accident, including continuous or repeated exposure to conditions, which results in personal injury." A personal injury is a "bodily injury, sickness, or disease sustained by any person which occurs during the policy period." The Hartford policies contain similar language.[2]

---

[2]The Hartford policies contain language stating that:

(continued...)

Pacific Employers points out that New York courts have interpreted similar policies to find that coverage is triggered by an "injury-in-fact," that is, when a bodily injury in fact occurs during the policy period. In asbestos-related cases, such courts have concluded that injury-in-fact "begins upon initial exposure to asbestos and continues through manifestation of disease." Pacific Employers' Brief, dkt. # 254-2 at 8 (citing Stonewall Insurance Company v. Asbestos Claims Management Corp., 73 F.3d 1178, 1198 (2d Cir. 1995) (finding that "the jury's determination that injury-in-fact commences with the time of first exposure and progresses continuously thereafter was sufficiently supported by the evidence regarding the etiology of such cancers."). Plaintiff notes that a recent decision from the Appellate Division calls this standard into question. See Continental Casualty Co. v. Employers Insurance Company of Wausau, 60 A.D.3d 128, 871 N.Y.S.2d 48 (1st Dept. 2008) (Keasbey). Keasbey seems to suggest that coverage is not triggered until an insured can "demonstrate actual damage or injury during the policy period," not just exposure. Id. at 148. The insurers do not argue, however, that the Keasbey approach would apply. Instead, their analysis of the amount owed is premised on the idea that coverage is triggered by exposure. Troy Belting does not appear to dispute that the trigger event is exposure. The Court will therefore accept date of first exposure as the event that triggers coverage, recognizing that Troy Belting

---

²(...continued)
  The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily harm . . . to which the insurance applies, caused by an occurrence;
and
  "[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

- 9 -

vociferously disputes that the insurers' evidence adequately establishes such exposure dates for the settled cases in question.

Troy Belting's argument here is that the evidence provided by the insurers is insufficient to grant summary judgment to the insurers. Troy Belting contends that much of the evidence presented–which comes in the form of depositions from the underlying cases, case summaries, and filings related to settlement of those cases, is equivocal or inadmissible on various grounds, including hearsay. As such, the insured claims, a question of fact exists as to the point where the exposure–and therefore the period where the pro rata shares are allocated–begins. Because of the fact–as explained below–the parties have not yet collected the evidence necessary to make a determination of which entities are responsible for the pro rata shares, the Court declines to make a determination of whether sufficient evidence exists to determine as a matter of law the date of first exposure on each of the underlying cases. Moreover, other interested parties may have an interest and seek to participate in that argument. If other insurers are involved, those insurers may seek to limit their liability by establishing a later date of first exposure than that agreed to by Hartford and Pacific Employers.

### b. Insurers' Liablity for the Settlement

If date of first exposure could be established, the next question for the Court would be how to calculate each insurers' responsibility for payment under New York law. In asbestos cases, this issue is complicated by the length of time typically between exposure and manifestation. The parties appear to agree on the general legal principle that should be applied for determining the insurers' share, though they disagree about Troy Belting's responsibility for any periods when neither insurer provided coverage. The insurers argue

that New York law requires indemnity costs to be prorated to time on the risk under circumstances like those in this case. Pacific Employers points to Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co., 98 N.Y.2d 208 (2002), for this proposition. In that case, the court considered how to allocate payment responsibility when "an alleged harm spans many years and thus implicates several successive insurance policies[.]" Id. at 221. The court noted the definition of occurrence in the policies in question confined that meaning to be events that occurred "during the policy period." Id. at 222. The court therefore rejected joint and several liability for insurers and instead applied the idea that each insurer would be responsible for a pro rata share of the payment based on time on the risk. Id. at 224. Citing to numerous state and federal cases in the asbestos context, Plaintiff argues that Pacific Employers "is obligated to pay only its share of the total settlement that is proportionate to the number of years of coverage under the PEIC Policies and the number of years of injury." Moreover, the Plaintiff contends, the insured, not the insurer, is responsible for any "periods in which the insured is self-insured, uninsured (i.e., failed to purchase insurance), underinsured (i.e., through exhaustion of the limits of one or more polices) or insured by an insurer that is now insolvent." Plaintiff cites to Stonewall, 73 F.3d at1203 for the proposition that "proration [to the insured] is appropriate as to years in which [the insured] elected not to purchase insurance or purchased insufficient insurance, as demonstrated by the exhaustion of its policy limits."

Plaintiff further points out that some courts have concluded that an insured is not obligated to pay a pro rata share for those periods where insurance for the underlying claim was not available. Courts have in such cases ended the allocation period on the date that coverage was no longer available. Other courts have extended the period to the earlier of

- 11 -

the underlying claimant's diagnosis, death, or filing of suit.  See Sybron Transition Corp. v. Sec. Ins., 258 F.3d 595, 599-600 (7th Cir. 2001) (applying New York law and concluding that the calculation of the time on the risk should not be halted at the time when insurance was no longer available, but from the date of diagnosis, death or filing of suit).  Following the Sybron rule, the Plaintiff points out, would extend the allocation period to date of diagnosis for each claimant, which was in the 2000s.  The insurer' calculations instead leave the time on the risk at the time when the last Hartford policy expired.  Troy Belting does not appear to dispute that the expiration of the last policy should mark the end of the allocation period.

Troy Belting's argument does not dispute that a pro rata allocation based on time on the risk is appropriate in some cases with facts similar to this one.  Troy Belting argues, however, that the facts of this case, particularly the conduct of the insurers, means that no share of the pro rata allocation should be assigned to the insured.  Troy Belting points out that Courts have not conclusively determined how to deal with periods where the insured had no insurance or where there was a dispute regarding the existence of available coverage. Citing to New York Ins. Dept. Liquidation Bureau v. Generali Ins. Co., 44 A.D.3d 469, 844 N.Y.S.2d 13 (1st Dept. 2007), Troy Belting argues that no proration to the insured is permitted in this case.  In that case, two insurers had provided coverage for a realty company that exposed tenants to lead paint.  Id. at 469.  During much of the time period in question, the realty company had no insurance.  Id.  One of the insurers and the realty company had become insolvent by the time the case was settled.  Id.  The insolvent insurance company had paid out insurance claims, while the defendant insurance company had disclaimed coverage and refused to participate.  Id. at 469-70.  New York's Insurance Liquidation Bureau then sought reimbursement from the defendant insurer.  Id. at 470.  The trial court

concluded that each insurer's contribution should be pro-rated according to time on the risk, and that the insurers should share responsibility for uninsured periods based on their prorated share. Id. The appellate court, noting that the "time on the risk" formula "did 'not foreclose allocation among insurers by others methods' and that '[time on the risk analysis] is not the last word on proration,'" concluded that "[u]nder the particular circumstances presented, in which plaintiff, in the face of Generali's unjustified refusal to honor its obligations, bore nearly the entire costs of defending and settling the underlying claim against the defunct insured, convering lengthy periods for which there was no applicable coverage," the trial court properly allocated responsibility for the settlement costs. Id. at 470-71 (quoting Consolidated Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 225, 774 N.E.2d 687 (2002)).

Even if the Court disagrees with that premise, Troy Belting argues that the facts and circumstances of this case do not permit assigning pro rata shares. Troy Belting argues that the policy language in question does not permit recovery from the insured. Moreover, the policies gave the insurers the right to subrogate against any other insurers, and the two companies have not done that. Finally, Troy Belting insists that the doctrines of laches and/or estoppel bar the insurers from seeking contribution, and thus entitles them to summary judgment. The insurers controlled the defense of the case for years and never sought contribution from Troy Belting nor informed Troy Belting of an intention to seek contribution. This thwarted Troy Belting's ability to establish the relevant date of first exposure independently and means the company lacks good evidence of when such exposure actually occurred. That means the insurers can set a date of first exposure that shifts much of the cost of settlement to the insured.

- 13 -

The Court agrees that pro-rata shares of time on the risk generally serve as the method for allocating responsibility for settlements in cases where several insurance policies cover an injury that took years to develop and manifest itself. "[W]hen continuous . . . damage takes place over a number of policy periods, the liability for that injury is allocated over the time during which . . . damage occurred." Olin Corp. v. Underwriters at Lloyd's, 468 F.3d 120, 126 (2d Cir. 2006) (applying New York Law). The Court also agrees that the way to determine proper allocation under those circumstances depend on the facts of the case and the conduct of the parties involved. See, e.g., Roman Catholic Diocese of Brooklyn v. National Union Fire Ins. Cas. Co., 21 N.Y.3d 139, 154, 969 N.Y.S.2d 808, 819 (2013) (finding that pro rata application was appropriate when the policies did not indicate a desire to assign liability to a single insurer and the injury could not be assigned "to particular policy periods."). An insured who chose to self-insure or forego insurance during some period where the risk existed can at times be responsible for a pro-rata share based on that choice. See, e.g., Stonewall, 73 F.3d at 1203 (finding that insured that "proration-to-the-insured" is available for periods when the insured declined available insurance). The principle that applies under these circumstances is that "in the absence of any policy provisions to the contrary, and with no ability to pinpoint exactly when the insured event occurred, the most equitable means of apportioning the liability for the losses is in direct proportion to each insurer's time on the risk." Serio v. Pub. Serv. Mut. Ins. Co., 304 A.D.2d 167, 172, 759 N.Y.S.2d 110, 115 (2d Dept. 2003).

Here, the evidence has not yet been developed in a manner sufficient to determine "each insurer's time on the risk." The parties admit that discovery has not yet determined all insurers that had time on the risk. To answer the question of the proper allocation of

indemnity costs, the Court needs a fuller picture of all of the parties potentially obligated to pay, whether those parties are insurers or insured. The insurers' motions do not provide this information. Instead, their motions simply note the dates for which they provided coverage and the date of first exposure, and then allocate costs based on their time on the risk, asking for contribution for the remainder from their insured. The insurers make no effort to determine whether another entity could be responsible for coverage during those periods. Instead, they simply seek an order from the Court directing Troy Belting to reimburse them for alleged overpayments and leave it to their insured to seek recovery from some other parties. This method ignores the possibility that other insurance may have existed during the relevant periods and thus ignores the legal requirements for pro-rata allocation.

Indeed, Troy Belting argues that the company had insurance from other insurers for the period before the purchase of the first Pacific Employers policy in the 1970s, a period the movants seek to have assigned pro rata to their insured. Troy Belting "has retained an expert to establish the terms, conditions, and limits" of any available policies. Troy Belting Brief in Opposition, dkt. # 261-2 at 10. Troy Belting's brief argues that the expert deadline in this case has not yet passed, and review of such testimony is incomplete. If such policies existed, Troy Belting may have an argument about allocation to these insurers, rather than to Troy Belting. Such insurers may have their own arguments about whether they should be responsible for any portion of the settlements.

The Court must therefore find that summary judgment for any party is premature. As the issue in this case is largely the allocation of the costs of settlement among various parties, and not all evidence related to that issue has been collected and analyzed, more evidence on other insurers and any obligations they have in this matter must be collected

before summary judgment can be properly considered. The Court rejects the moving insurers' efforts to recover contribution from their insured before establishing all of the facts about coverage necessary to make a determination of proper allocation. The Court will therefore deny all the motions for summary judgment with leave to renew. The parties may renew their motions once they can establish the identity of all additional insurers and the periods where they provided coverage.

## IV. Conclusion

For the reasons stated above, the motions for summary judgment of Plaintiff Pacific Employers Insurance Company, dkt. # 254, Defendant Hartford Accident and Indemnity Company, dkt. # 203, and Defendant Troy Belting Company, dkt. # 261, are hereby DENIED with leave to renew.

IT IS SO ORDERED

Dated: September 28, 2015

_____
Thomas J. McAvoy
Senior, U.S. District Judge